

I N T H E

# Court of Appeals of Indiana

Moriah S. Denny,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Nov 03 2025, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

November 3, 2025

Court of Appeals Case No.
25A-CR-374

Appeal from the Cass Circuit Court

The Honorable Stephen R. Kitts II, Judge

Trial Court Cause No.
09C01-2309-F3-8

---

**Opinion by Judge Scheele**
Judges Foley and Kenworthy concur.

**Scheele, Judge.**

## Case Summary

[1] Moriah S. Denny appeals her convictions for Level 3 felony criminal confinement and Level 3 felony aggravated battery, arguing that her convictions violate substantive double jeopardy. Because the two convictions violate double jeopardy, we remand with instructions to vacate the confinement conviction and for resentencing on the aggravated battery conviction.

## Facts and Procedural History

[2] In September 2023, Denny lived with her mother, sixty-five-year-old Vera Swisher, in Logansport. There was ongoing tension in their relationship. On September 14, Denny was having a "bad day" and was upset because the tire on her motorcycle had blown. Tr. Vol. II p. 114. Swisher and Denny also argued because Denny failed to clean up the yard after her two rottweilers.

[3] After the argument, Swisher turned her back to Denny and began walking up the stairs in her home. The next thing Swisher remembered was lying on the floor in the dining room with Denny pinning her down and choking her. Swisher later said Denny "must have had her knees on, on my shoulders so I couldn't move." *Id.* at 115. While she was pinned down, Swisher described Denny's face as "angry" and "all distorted . . . like she was crazy." *Id.* at 114. Swisher put her hands up to try to get Denny to stop choking her and was praying for help before she fell unconscious. In a police interview, Denny admitted that she pulled Swisher down the stairs, punched her, and choked her

"causing a seizure and blood and foam to come out of [Swisher's] mouth. *Id.* at 198; *see* State's Ex. 45 at 11:30-12:25; Tr. Vol. III pp. 40-41.

[4] After rendering Swisher unconscious, Denny went next door and encountered her brother, who returned to her house with her. At her brother's urging, Denny called 9-1-1 and reported that her mother had fallen down the stairs. Medics arrived and found Swisher across the room, not at the bottom of the stairs. Swisher's eyes were open, but she was unresponsive and bleeding from her mouth. Medics took her straight to a helipad in Logansport, and Swisher was airlifted to a level 1 trauma hospital in Fort Wayne. There, Swisher was treated for an injury on the back of her head; pain and multiple bruises on her neck, chest, face, and upper lip; concussion symptoms; and a laceration on her finger from Denny biting her. Swisher was in the hospital for five days and continues to suffer from neck pain and flashback nightmares.

[5] Denny was charged with Level 3 felony aggravated battery, Level 6 felony strangulation, Level 5 felony domestic battery resulting in serious bodily injury, and Level 3 felony criminal confinement resulting in serious bodily injury. At trial, Denny testified and again admitted to choking Swisher and pulling her down the stairs. However, Denny argued that her actions were taken in self-defense while Swisher was on top of her during the fight. Denny stated that she was reaching up and choking Swisher because Swisher was trying to gouge her eyes out. Then, Denny said she rolled Swisher off her after Swisher lost consciousness.

[6] During its closing argument, the State argued that Denny "chased [Swisher] up the stairs, grabbed her, threw her down the stairs, mounted her, and strangled her within seconds of her life." Tr. Vol. III p. 71. The State also noted that Swisher was located by medics multiple feet away from the stairs where she was "launched, apparently, or drug[.]" *Id.* at 74. Denny's counsel then argued the only evidence of confinement was Swisher's disputed claim that Denny was on top of her pinning Swisher down during the fight. The State did not dispute Denny's characterization of that evidence in its rebuttal. The jury found Denny guilty as charged.

[7] At sentencing, the trial court vacated Denny's convictions for strangulation and domestic battery. During a discussion regarding sentencing for the aggravated battery and criminal confinement convictions, the court questioned whether the convictions were "distinct enough" to be consecutive. *Id.* at 124. The State conceded Denny's actions were "a continuous act . . . because it is" but argued the sentences should be consecutive because both were "crimes of violence[.]" *Id.* The court sentenced Denny to consecutive terms of ten years executed in the Indiana Department of Correction for the aggravated battery conviction and four years suspended for the criminal confinement conviction. Denny now appeals.

## Discussion and Decision

[8] Denny argues her convictions for aggravated battery and criminal confinement constitute double jeopardy. We review double-jeopardy claims de novo.

*McGuire v. State*, 263 N.E.3d 745, 749 (Ind. Ct. App. 2025), *trans. denied*. Where, as here, the claim involves a single criminal transaction that violates multiple statutes with common elements, we apply the analysis laid out in *Wadle v. State*, 151 N.E.3d 227, 237 (Ind. 2020).

[9] First, we determine whether "the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication[.]" *Id.* at 248. If so, the inquiry is at an end and there is no double-jeopardy violation. *Id.* Here, the parties agree that neither the aggravated battery statute nor the criminal confinement statute permits multiple punishments. As such, we turn to *Wadle*'s next step.

[10] Second, we determine whether the offenses are included "either inherently or as charged[.]" *Id.* If neither offense is included in the other, again the inquiry ends and there is no double-jeopardy violation. *Id.*

> Included offenses come in two forms: inherently included offenses and offenses that are included as charged. An offense is inherently included if it meets the definition of "included offense" in Indiana Code Section 35-31.5-2-168. An offense is included as charged (or "factually included") if the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense. In determining whether offenses are included as charged, we examine only the facts as presented on the face of the charging instrument.

*McGuire*, 263 N.E.3d at 749-50 (quotations omitted).

[11]   Denny does not contend that the offenses of aggravated battery and criminal confinement resulting in serious bodily injury are inherently included offenses. Indeed, the offenses fail to meet the statutory definition of an "included offense" under Indiana Code section 35-31.5-2-168, as each crime includes an element the other does not. However, Denny argues the offenses are factually included. "[W]hen assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument.**" *A.W. v. State*, 229 N.E.3d 1060, 1067 (Ind. 2024) (emphasis in original). "This includes examining the 'means used to commit the crime charged,' which must 'include all of the elements of the alleged lesser included offense.'" *Id.* (quoting *Wadle,* 151 N.E.3d at 251).

[12]   Where ambiguities exist in a charging instrument about whether one offense is factually included in another, courts must construe those ambiguities in the defendant's favor and find a presumptive double-jeopardy violation, although the State can later rebut this presumption. *Id.* at 1069. This is a protection for the defendant, as otherwise the State "could unilaterally decide how much to include (or not include) in the charging instrument, which could decisively determine the outcome of a double jeopardy claim." *Id.*

[13]   Turning to the charging information here, Count I, aggravated battery, reads as follows:

> The undersigned, being duly sworn upon his oath, says that on or about September 14, 2023 in Cass County, State of Indiana, Moriah S. Denny did knowingly or intentionally inflicts [sic]

injury on Vera Swisher that creates a substantial risk of death, contrary to the form of the statutes in such cases made and provided by I.C. 35-42-2-1.5(2), and against the peace and dignity of the State of Indiana.

App. Vol. II p. 174 (emphasis omitted). The charging information for Count IV, criminal confinement, reads as follows:

The undersigned, being duly sworn upon his oath, says that on or about September 14, 2023 in Cass County, State of Indiana, Moriah S. Denny did knowingly or intentionally confine Vera Swisher without the consent of Vera Swisher, said act resulting in serious bodily injury to Vera Swisher, contrary to the form of the statutes in such cases made and provided by I.C. 35-42-3-3(a) and I.C. 35-42-3-3(b)(3)(B), and against the peace and dignity of the State of Indiana.

*Id.* at 175.

[14] Other panels of our Court recently addressed similar situations in *Delgado v. State*, 24A-CR-1675, 2025 WL 441818 (Ind. Ct. App. Feb. 10, 2025) and in *Chase v. State*, 24A-CR-2954, 2025 WL 2303940 (Ind. Ct. App. Aug. 11, 2025), *remand instructions clarified on reh'g*, 24A-CR-2954, 2025 WL 2673268 (Ind. Ct. App. Sept. 18, 2025). In *Delagado*, the defendant was charged with criminal confinement (requiring defendant to have confined the victim) and domestic battery (requiring defendant to have touched the family-member victim in a rude, insolent, or angry manner). In *Chase*, the defendant was charged with criminal confinement and domestic battery while armed with a deadly weapon (requiring the defendant to have touched family-member victim in a rude,

insolent, or angry manner while armed with a deadly weapon). The charging information in both cases tracked the statutory language and lacked specific facts to make clear that the bases for each of the offenses were different. *See e.g., Bradshaw v. State*, 239 N.E.3d 864, 868 (Ind. Ct. App. 2024) (charging information is ambiguous where it simply tracked statutory language for both offenses and did "not demonstrate that the two offenses were separate offenses, as the means used to commit the greater offense could have included all of the elements of the alleged lesser offense[.]") Because it was conceivable from the face of the charging information that the means to commit the confinement were entirely included in all the elements of domestic battery, the charging information in each case was deemed ambiguous. *Delgado*, 24A-CR-1675, 2025 WL 441818 at *4 (defendant's confinement may have been committed by the touching in a rude, insolent or angry manner); *Chase*, 24A-CR-2954, 2025 WL 2303940 at *4.

[15] Similarly, here, the charging information for aggravated battery and criminal confinement simply tracks the statutory language. Because of the way the information was drafted, specifically the lack of factual detail, one cannot necessarily tell whether the means used to commit the confinement was something other than aggravated battery. Hypothetically, without specific facts, it is conceivable that Denny pinned down Swisher by means of inflicting injury that created a substantial risk of death, such as by choking. In other words, it is entirely possible on the face of this charging information that the knowing or intentional confinement alleged in the criminal confinement count was

committed by the knowing or intentional infliction of injury alleged in the aggravated battery count. This ambiguity creates a rebuttable presumption of a substantive double-jeopardy violation. *See A.W.*, 229 N.E.3d at 1070.

[16] Thus, we proceed to the final step and give the State the opportunity to rebut the presumptive double-jeopardy violation. To do so, "the State must demonstrate that it made clear to the fact-finder at trial that the apparently included charge was supported by independent evidence such that the State made a distinction between what would otherwise be two of the same offenses." *Eversole v. State*, 251 N.E.3d 604, 608 (Ind. Ct. App. 2025) (quotation omitted), *trans. denied*. To make this determination, we look to whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 249.

[17] We find a comparison of the facts in *Delgado* and *Chase* to be particularly helpful here. In *Delgado*, the defendant confined the family-member victim to their residence for an hour and committed acts of domestic battery throughout that time. 24A-CR-1675, 2025 WL 441818 at *5. In closing argument, the State noted that the defendant's confinement was "*not just* down on the floor when he attacked her but ... for a whole hour ...." *Id.* (emphasis in original) (citation to the record omitted). This Court found the two acts were sufficiently separate in time and purpose to support both convictions. *Id.* Conversely, in *Chase*, the defendant confined the family-member victim by holding a knife to her throat and threatened to kill her if she tried to leave. 24A-CR-2954, 2025 WL 2303940

at *5. There, the act that proved domestic battery by means of a deadly weapon was holding the knife to the victim's throat; in the same moment, the defendant confined the victim by threatening to kill her if she tried to leave. *Id.* The State did not present any evidence or argument that the two crimes were separated by time, place, or purpose. *Id.* This Court, therefore, reversed the domestic battery charge. *Id.*

[18] The facts as presented at trial in the instant case are similar to those in *Chase*, making clear that this was a single transaction. During closing, the State argued that Denny "chased [Swisher] up the stairs, grabbed her, threw her down the stairs, mounted her, and strangled her within seconds of her life." Tr. Vol. III p. 71. Although the State also mentioned that medics located Swisher multiple feet away from the stairs where she was "launched, apparently, or drug," the State did not explain how any of the facts showed the confinement was a separate act from the aggravated battery. *Id.* at 74. The only evidence of confinement offered was that Denny pinned Swisher on the floor during the battery. In the same moment, Denny choked Swisher until she bled and foamed from the mouth and lost consciousness. The State did not rebut this characterization of the facts. There is no evidence that the confinement occurred for another purpose or in a separate time or place than the infliction of injury during the battery.

[19] Based on the evidence and arguments presented, the confinement charge is factually included in the aggravated battery charge. As such, we agree with Denny that the court violated her substantive double-jeopardy rights by entering

judgments of conviction for both Level 3 aggravated battery and Level 3 criminal confinement resulting in bodily injury. We thus remand for vacation of the criminal confinement conviction and for resentencing on the aggravated battery conviction.

## Conclusion

[20] We affirm Denny's conviction for aggravated battery but reverse her conviction for Level 3 criminal confinement and remand for vacation of that conviction and for resentencing.

[21] Affirmed in part, reversed in part, and remanded with instruction.

Foley, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Offices
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana